Mr. John P. Proctor State Auditor Suite 2410 1660 Lincoln Street Denver, Colorado 80203
Dear Mr. Proctor:
In response to your inquiry concerning the affirmative action requirements of agencies within the Department of Regulatory Agencies, the following opinion is provided.
Paragraph 8(b)II of House Bill 1088 (Sunset Law) (C.R.S. 1973,24-34-104(8)(b), as amended) requires that the State Auditor review the extent to which affirmative action requirements of state and federal statutes and constitutions have been complied with by the agency or the industry it regulates. In conjunction with his review of the various boards and commissions of the Department of Regulatory Agencies, the auditor has requested opinions on certain questions:
QUESTIONS PRESENTED AND CONCLUSIONS
1. Based on existing laws, what affirmative action responsibilities are required of the various boards and commissions noted on the attached schedule? (Note: The individual boards are not listed on this opinion.)
 Generally, "affirmative action" is a responsibility required of one who has discriminated against another person or persons to take positive steps to remedy the effects of the past discriminatory conduct. Although such responsibility may be required in other contexts as well, most affirmative action cases have arisen in the field of employment where, as a result of past discrimination, the work opportunities of women, ethnic minorities and others have been circumscribed so that employers have been required to provide procedures such as special job referral procedures to remedy the past discrimination. See, e.g., Associated General Contractors of Massachusetts, Inc. v. Altshuler, 490 F.2d 9 (1st Cir. 1973), cert. denied, 416 U.S. 957
(1974).
2. What methods can they use to enforce the above responsibilities as they relate to such items as:
a. School accreditation policies and procedures
b. Application policies and procedures
c. Examination policies and procedures
d. Licensing policies and procedures for:
1) Individuals
2) Business entities
 Agencies should consider the effect of their procedures to determine whether any of such procedures have the effect of dissuading minorities or women from using the services of the agency.
 Agencies should evaluate the industries or individuals regulated to determine whether any of such entities are engaging in discriminatory practices. Such practices by a regulated entity should be considered by the agency in licensing and accreditation procedures.
ANALYSIS
The federal constitutional and statutory bases for prohibiting discrimination particularly applicable to state agencies are numerous, including the thirteenth and fourteenth amendments to the United States Constitution, the Civil Rights Acts of 1866 and 1870 (42 U.S.C. § 1981 and 1982), the Civil Rights Act of 1871 (42 U.S.C. § 1983), the Civil Rights Act of 1964 (42 U.S.C. § 2000d, 2000e, and 2000h), the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621, etseq.), the Health Manpower Training Act of 1971 (42 U.S.C. § 295h-9), the Nurse Training Act of 1971 (42 U.S.C. § 298b-2), the State and Local Fiscal Assistance Act of 1972 (31 U.S.C. § 1221), Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681-1683), the Rehabilitation Act of 1973 (20 U.S.C. § 701, etseq.), and the Age Discrimination Act of 1975 (42 U.S.C. § 6101, et seq.). In addition, the president of the United States has issued various executive orders (including E.O. 11141, E.O. 11246, E.O. 11764, and E.O. 11914) and various federal agencies (including the Equal Employment Opportunity Commission, the Department of Labor, the Department of the Treasury, the Civil Service Commission, and the Department of Health, Education, and Welfare) have adopted rules and regulations which affect state agencies. Taken together, these enactments define the scope of the affirmative action responsibilities required of state agencies by the federal government. The antidiscrimination scheme is clearly pervasive; to attempt to delineate all ramifications of each enactment is beyond the scope of this opinion. At a minimum, though, the Auditor should be aware that all state agencies are "employers" within the meaning of 42 U.S.C. § 2000e, are therefore prohibited from discrimination in employment on the basis of race, color, religion, sex or national origin, and must take affirmative action to eradicate the effects of past or present discriminatory practices. In addition, to the extent that state agencies receive grants from or contract with the federal government, those state agencies must not engage in discriminatory practices and may be required to take affirmative action to remedy and avoid such practices in order to continue to receive federal funds. Outside of these broad guidelines, the actual activities of a particular agency must be scrutinized to determine which, if any, of the cited federal enactments may apply to the agency and what specific affirmative action responsibilities may thereby be created. The office of the auditor should familiarize itself with the above-cited statutes and regulations to make this assessment.
Insofar as this state's law is concerned, article XII, section13(1) of the Colorado constitution requires that appointments and promotions to offices and employments in the state personnel system shall be ascertained "without regard to race, creed, or color, or political affiliation." A Colorado statute makes the same provision. See C.R.S. 1973, 24-50-101(1). Moreover, on April 16, 1975, the Governor of Colorado issued an Executive Order on equal employment opportunity and affirmative action which specified that "each appropriate unit of state government shall develop and implement affirmative action programs which will seek out and involve minorities and women at every level of employment and decision making in State government, and ensure their access to State contracts and services." A copy of this Order is attached. This Order requires reporting by each agency to the Governor of the steps taken to implement affirmative action programs. To the extent that each listed agency has developed such a program, it obviously has the responsibility to implement the plan. If no such plan has yet been developed, or if the plan developed has been found insufficient by the Governor or his delegatee, the affirmative action responsibility of that agency has not been properly addressed. Perhaps the Auditor should check with the office of the Governor or his delegatee to determine the progress of the agencies in this regard. In addition, the State Personnel Board has held public hearings concerning discrimination within the state personnel system and remedies therefor, has made findings of fact of past discrimination in such system, and has adopted rules which seek to implement affirmative action. Each agency will have an affirmative action responsibility when performing personnel functions to the extent required by those rules. Finally, the Colorado Attorney General has issued an opinion, dated March 24, 1976, concerning some permissible affirmative action remedies. A copy is attached hereto.
The second question submitted concerns methods the listed agencies can use to enforce affirmative action responsibilities in certain areas.
Agencies should consider the effect of their procedures to determine whether any of such procedures have the effect of dissuading minorities or women from using the services of the agency.
Agencies should evaluate the industries or individuals regulated to determine whether any of such entities are engaging in discriminatory practices. Such practices by a regulated entity should be considered by the agency in licensing and accreditation procedures.
In the awarding of a state contract, an agency should obtain written assurances that the contractor is not engaging in discriminatory practices. The presence or absence of such practices should be a factor involved in awarding the contract, as an aspect of "responsibility" of the bidder. C.R.S. 1973, 24-30-404. In this regard, see chapter 6, section 1.0603, State of Colorado Fiscal Rules (1975), prescribing the form of state contracts, including an antidiscrimination clause. Contractor compliance with the clause should be monitored by the agency, insofar as possible within the limits of available resources.
Regarding the specifics of question 2 of the inquiry, some actions which can be taken by agencies to implement their responsibilities are as follows:
School accreditation policies and procedures. Agencies with these responsibilities can establish policies making the affirmative action policies of schools a factor in whether or not such school receives accreditation.
Application policies and procedures. Agencies which use applications can inspect the applications to determine whether any information revealing an invidiously discriminatory intent appears thereon or is requested thereby. Agencies can further analyze the sex and race of persons using their services to determine whether their application procedures have the effect of dissuading women and minorities from using the services of the agency so long as such analysis is not used to impermissibly discriminate against such persons.
Examination policies and procedures. Agencies can analyze their examinations to determine whether such examinations have a disparate effect upon minorities and women. Agencies can take action to validate examinations to assure that culturally-biased questions are not used. In this regard, your office or any affected agency may wish to examine the above-referenced attorney general's opinion for its discussion of test validation problems.
Licensing policies and procedures. Agencies can inspect their licensing procedures to determine whether such procedures have a discriminatory effect. Agencies can establish policies making equal employment opportunity and affirmative action by licensees a factor for consideration in the granting or revocation of licenses. Such policies may be required of individuals and business entities alike.
A number of sources are available to assist agencies in developing plans to meet their affirmative action requirements. The Department of Regulatory Agencies has an affirmative action officer who can provide information and assistance regarding details of affirmative action plans. The State Department of Personnel has an Affirmative Action Unit which can be called upon to assist in development of affirmative recruitment, hiring, and promotion policies. The State Civil Rights Commission, within its budgetary limits, can provide assistance in matters of discrimination.
Attached to this opinion is a copy of guidelines published by the Department of Health, Education and Welfare of the United States (HEW) containing the text of Executive Order 11246 and certain implementing regulations which should prove helpful in assuring compliance with federal requirements for affirmative action.
This opinion is not to be construed as prescribing the outer limits of affirmative action which can be taken by an agency in its efforts to assure that minorities and women are afforded equal access to all aspects of state government. If there are questions concerning particular actions by an agency in furtherance of equal opportunity, then such individual questions should be submitted for an opinion.
SUMMARY
This opinion discusses federal and state constitutional provisions, statutes, and executive orders which require the Department of Regulatory Agencies to take affirmative action to eliminate discrimination. It also discusses various affirmative action measures which may be implemented.
Very truly yours,
 J.D. MacFARLANE Attorney General
DISCRIMINATION CIVIL RIGHTS STATE AGENCIES ADMINISTRATIVE PROCEDURE LICENSES, OCCUPATIONAL AND PROFESSIONAL
42 U.S.C. § 1981, 1982, and 198342 U.S.C. § 2000d, 2000e, and 2000h
42 U.S.C. § 298b-242 U.S.C. § 6101
31 U.S.C. § 122129 U.S.C. § 62120 U.S.C. § 70120 U.S.C. § 168120 U.S.C. § 168220 U.S.C. § 1683
C.R.S. 1973, 24-34-104(8)(b) C.R.S. 1973, 24-30-404 C.R.S. 1973, 24-50-101(1)
Colo. Const. art. XII, § 13(1)
LEGISLATIVE BRANCH Auditor, Office of State REGULATORY AGENCIES, DEPT.
This opinion discusses the federal and state constitutional provisions, statutes, and executive orders which require the Department of Regulatory Agencies to take affirmative action to eliminate discrimination. It also discusses various affirmative action measures which may be implemented.